CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 24 2006

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

| | |
|---|---|
| MARTINSVILLE CABLE, INC., a Virginia non-profit corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 4:06cv033 ) |
| TIME WARNER NY CABLE, LLC, a Delaware limited liability corporation, et al., | ) ) By: Hon. Michael F. Urbanski ) United States Magistrate Judge ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This case concerns the ability of Martinsville Cable, Inc. ("Martinsville Cable") to exercise a right to match an offer to purchase the assets of Multi-Channel T.V. Cable Company, d/b/a Adelphia Cable Communications ("Adelphia"), which has provided cable television service in the City of Martinsville and Henry County pursuant to certain franchise agreements and ordinances since 1998.

This matter is before the court on Martinsville Cable's motion for partial summary judgment. Martinsville Cable seeks a declaration that the sale and transfer of the Adelphia cable televison assets to Time Warner Cable, Inc. ("Time Warner"), and then to Comcast Corporation ("Comcast"), pursuant to the Asset Purchase and Exchange Agreements entered into by the parties, is subject to Martinsville Cable's right to match the offer to purchase made by Comcast. This right to match is set forth in ordinances adopted by Henry County and the City of Martinsville at the time of the execution of the franchise agreements with Adelphia. There are no

disputed issues of material fact relevant to this motion. Rather, defendants Time Warner and

Comcast challenge the legal import of Martinsville Cable's claimed right to match the offer to

purchase. The issues raised in this motion have been fully briefed and were argued on July 17,

2006. Following argument, the parties submitted additional briefing and evidence, and Time

Warner and Comcast filed their own joint motion for summary judgment on the same legal

issues.

For the reasons summarized on the following pages and explained more fully in the

opinion below, the undersigned denies plaintiff's motion for partial summary judgment and

enters summary judgment in favor of defendants.

## I.

Plaintiff Martinsville Cable is a Virginia corporation incorporated in early 2006. At the

time of its incorporation, its directors were the Mayor, Vice Mayor and City Manager of the City

of Martinsville. Plaintiff's only asset is an assignment by the City of its right to match the offer

to purchase the Adelphia cable television assets. Despite its separate corporate existence, it is

clear that Martinsville Cable is nothing more than a conduit for the City to own and operate these

assets.

Under Virginia law, Henry County may neither own nor operate the Adelphia cable

television assets. Va. Code Ann. § 15.2-2108.3.[1] The City of Martinsville, however, may own or

operate the assets provided it complies with certain requirements, including holding a

preliminary public hearing, commissioning a feasibility study, and providing for public notice

---

[1] The provisions of Va. Code Ann. § 15.2-2108.2, et seq., are referred to hereafter as the
"Municipal Cable Law."

2

and a referendum. Va. Code Ann. §§ 15.2-2108.4 - 2108.8. In this case, the City of Martinsville made the decision to match the offer to purchase the Adelphia cable television assets without first holding the requisite preliminary public hearing. See Va. Code Ann. § 15.2-2108.5. Likewise, the City has failed to take any of the other steps required for it to own or operate a cable television facility. Without complying with these legal requirements, the City of Martinsville may not lawfully own or operate the Adelphia cable television assets. Under the express language of the statute, these strictures apply to both direct and indirect involvement in cable television. Thus, the City may not own or operate the Adelphia television cable assets indirectly through its thinly veiled alter ego, Martinsville Cable.

The City of Martinsville contends that it is exempt from the requirements of the recently enacted Municipal Cable Law under a grandfather clause applicable to municipalities which had installed a cable television headend[2] prior to the law's enactment. See Va. Code Ann. § 56-265.4:4(E). While it is undisputed that the City of Martinsville itself had not installed such a headend, the City contends that all it needed to do to avail itself of this exception was to contract with Adelphia for headend installation. The City's position that it is exempt from the public notice and referendum requirements of the Municipal Cable Law is inconsistent with the plain language of the statute. The exception to the Municipal Cable Law's requirements for ownership and operation of a cable system applies only to cities that had installed a cable headend prior to the law's enactment; the City of Martinsville did not install a headend. Adopting a broad

---

[2] A headend, in cable television parlance, is the originating point where the satellite dish and T.V. antenna for receiving incoming programming are located.

Case 4:06-cv-00033-mfu   Document 77   Filed 08/24/06   Page 3 of 23   Pageid#: 1926

exception as urged by the City of Martinsville would, in effect, allow this exception to swallow the rule.

Further, even if the City's claimed right to match the offer to purchase[3] had legal validity, the City did not timely or properly exercise its right to match. Rather, the City, while providing notice by counsel that it intended to exercise its right to match in a conceded effort to exercise "leverage" over the transaction between Adelphia, Time Warner and Comcast, never actually matched Comcast's offer. Nor is there any indication that it was either capable of matching the offer or willing to do so, as Martinsville Cable could not have matched the like-kind exchange offered by Comcast, did not meet the transaction's closing deadline, and disagreed that the assets had the value assigned to them in the Time Warner/Comcast deal.

Time Warner and Comcast argue that by operation of federal law, the City and the County consented to the transfer of the assets to Time Warner and Comcast because they did not timely object to an application to the Federal Communications Commission ("FCC Form 394") for transfer of those assets. While Henry County Board of Supervisors' action on August 5, 2005 operated as a timely objection to the transfer, there are no Martinsville City Council minutes from the Council's meeting of the same date that reflect action taken to timely deny the FCC Form 394s. Despite the absence of any minutes reflecting such formal action, several members

---

[3] At oral argument, counsel for Martinsville Cable repeatedly referred to the right to match the Comcast offer as a "right of first refusal," whereas in the pleadings, it seeks enforcement of "purchase rights." Regardless of how the right is characterized, the cable ordinances do not allow the City and County to reject offers made by other entities and negotiate their own deals. Rather, the right to match set forth in the cable ordinances provides that "[t]he price to be paid by the City [County] shall be the bona fide offer including the same terms and conditions as specified in the bona fide offer." Declaration of Robert R. (Dan) Collins in Support of Motion for Partial Summary Judgment (Docket No. 17) (hereinafter First Collins Dec.), Ex. 2, 4 at 11.

4

of City Council have averred that denial was a "consequence of the City Council's decision to exercise the Purchase Rights." Declarations of James W. Clark, Joseph R. Cobbe and J. Ronald Ferrill at ¶ 4 (Docket Nos. 70, 72 and 73). Counsel for the City later wrote Adelphia on October 7, 2005 regarding its intent to deny the application.

Even if the City Council's actions at the August 5, 2005 meeting and in the October 7, 2005 letter from counsel are considered sufficient to constitute denial of the FCC Form 394 application, it is clear that neither the City nor County complied with the letter or spirit of their own cable television ordinances in denying the application. The ordinances require the governing bodies to consider the legal, financial, technical or other qualifications of the proposed transferee, the compliance of the transferring cable operator with the Franchise Agreement and ordinance, and whether operation by the transferee would adversely affect cable services to subscribers, or otherwise be contrary to the public interest. Rather than meet the requirements of these ordinances, Martinsville Cable, and thus the City, had its own agenda, and at the July 17, 2006 hearing on its motion, Martinsville Cable made its position perfectly clear. Martinsville Cable has injected itself into this asset transfer to obtain "leverage" over the parties to the transaction. Yet, under their own ordinances, neither the City nor County may oppose an assignment simply because it wishes to exercise "leverage" over the transaction; rather the City and County are required to consider the actual operation of Adelphia, the qualifications of Time Warner and Comcast, and the interests of both the cable subscribers and the public. Instead, the City and County have acted brazenly to assert "leverage" in their own interest, without so much as even paying lip service to the calculus required by their own ordinances.

5

In short, in order for the court to allow Martinsville Cable to exercise the sort of "leverage" it claims over this asset transaction, the corporation must have some enforceable legal rights serving as its fulcrum. As no such legal rights exist, there is no place for Martinsville Cable to support its claim of "leverage" over this transaction. For these reasons, as explained fully below, Martinsville Cable's motion for partial summary judgment is denied, and summary judgment is entered in favor of defendants.

## II.

In early 1998, the City of Martinsville and Henry County entered into separate agreements with Adelphia granting it a non-exclusive franchise to install, operate and maintain a cable television distribution system in those localities. See First Collins Dec., Ex. 1, 3. Pursuant to those franchise agreements, Adelphia owns certain assets used to supply cable television services. Both of the franchise agreements incorporated by reference certain City and County cable ordinances. The City Cable Ordinance provides that in the event Adelphia "makes a determination to sell or transfer its system in whole or in part, the City shall be entitled to a right to match any bona fide offer to purchase the System made to [Adelphia]." See First Collins Dec., Ex. 2 at 11, § 5.1. The County Cable Ordinance is identical. See First Collins Dec., Ex. 4 at 11. Both cable ordinances limit exercise of the right to match to within sixty days of receipt of a written bona fide offer. Id.

In 2002, Adelphia filed bankruptcy in New York, and subsequently operated the cable assets in Martinsville and Henry County as a debtor-in-possession. On April 20, 2005, Adelphia entered into an Asset Purchase Agreement with Time Warner, which, in turn, on the same day, entered into an Exchange Agreement with Comcast. Pursuant to these agreements, Time Warner

6

would purchase the Martinsville and Henry County cable assets from Adelphia and exchange them to Comcast for other properties in a like-kind exchange under Section 1031 of the Internal Revenue Code.

On June 10, 2005, Adelphia and Time Warner each filed applications, referred to as FCC Form 394s, with the Federal Communications Commission regarding these proposed transactions. See First Collins Dec. Ex. 5, 6. Under federal law, the City and County had 120 days to "act upon any request for approval of such sale or transfer." 47 U.S.C. § 537. As set forth in the United States Code, "[i]f the franchising authority fails to render a final decision on the request within 120 days, such request shall be deemed granted . . . ." Id.

On August 5, 2005, the City and County entered into a Purchase Rights Assignment Agreement, which provided for the transfer and assignment to the City of the County's right to match under the County Cable Ordinance. See First Collins Dec., Ex. 8.

On August 5, 2005, the Henry County Board of Supervisors rejected "the proposed resolution of Adelphia/Time Warner/Comcast," as reflected in the minutes of that meeting. See Time Warner Brief in Support of Defendants' Motion for Preliminary Injunction (Docket No. 26) (hereinafter "Time Warner PI Brief"), Ex. 5 at 2. Shortly thereafter, the Henry County Administrator wrote Comcast advising that the Henry County Board of Supervisors voted to reject the proposed consent resolution to the transfer of the Adelphia cable television assets to Time Warner and Comcast. See Time Warner PI Brief, Ex. 6.

At a special called meeting of the Martinsville City Council on August 5, 2005, Council deliberated in closed session and then approved several documents "relative to the City's relationship with Henry County and the current Adelphia franchise." See First Collins Dec. Ex. 7

7

at 1.[4] Among other things, in exchange for the County's transfer of the right to match the offer to purchase, the City and County agreed to amend an existing agreement regarding the Henry County Public Service Authority's wastewater flow to the City's wastewater treatment facility.

Also at the meeting on August 5, 2005, the minutes reflect that the City took certain other action regarding the cable television franchise as follows:

> Council member Ferrill then made a Motion to authorize the Law firm of Hunton and Williams to notify Adelphia, Comcast and Time Warner of our intent to exercise our right to purchase the City and County franchise. . . .

Id. at 3. The motion carried by a vote of 4-0. The minutes do not reflect any discussion or action taken by Martinsville City Council regarding the request for approval of transfer reflected in the FCC Form 394s, nor any discussion or consideration of the terms of the offer to purchase the cable television franchise. Following the hearing on July 17, 2006, Martinsville Cable filed new affidavits from several attendees at the August 5, 2005 City Council meeting, each of which provide that denial of the FCC Form 394s was handled in closed session on that day:

> One of the items considered at the meeting during the executive session was the proposed transfers of the City Franchise Agreement from Adelphia to Time Warner and from Time Warner to Comcast. As a consequence of the City Council's decision to exercise the Purchase Rights, the City Council determined to deny the FCC Form 394 applications for consent to the proposed transfers of the City Franchise Agreement. In addition, the City Council required that, as a condition of the agreements with Henry County, that Henry County also deny the FCC Form 394 applications submitted to it by Adelphia and Time Warner.

---

[4] In his deposition in this case, Collins testified that the exercise of purchase rights was discussed in closed session and counsel was authorized to do various things, following which "we came out and there were three or four motions made in an open meeting." Time Warner Cable's Supplemental Brief in Opposition (Docket No. 68), Ex. 7; Deposition Testimony of Robert R. Collins at 168-69 (hereinafter "Collins Dep.").

8

Declarations of James W. Clark, Joseph R. Cobbe and J. Ronald Ferrill at ¶ 4 (Docket Nos. 70, 72 and 73).

On August 8, 2005, the City, by counsel, wrote Adelphia and Time Warner and advised that the City was successor in interest to the rights of the County under the County Cable Ordinance. The August 8, 2005 correspondence from counsel further provided:

> Pursuant to Section 5.1 of the City Cable Ordinance and Section 6.5-104 of the County Cable Ordinance, the City hereby provides formal notice to Adelphia of its decision to exercise the Purchase Rights with respect to both the City Cable Assets and the County Cable Assets.

First Collins Dec., Ex. 9 at 2. The August 8, 2005 letter from counsel contained no specific terms relating to the exercise of the City's "purchase rights," nor does it purport to act upon the request for transfer called for by the FCC Form 394s.[5]

On October 7, 2005, within the 120 days set forth in 47 U.S.C. § 537, counsel for the City again wrote Adelphia, this time stating the following:

> Pursuant to Section 5.1 of the City Cable Ordinance and Section 6.5-104 of the County Cable Ordinance, on August 8, 2005, the City provided formal notice to Adelphia of its decision to exercise the Purchase Rights with respect to both the City Cable Assets and the County Cable Assets. As a result of that decision, the City has determined to deny the Form 394 application, and to withhold its consent to transfer of the Franchise Agreement, on the grounds that the transfer of the Franchise Agreements is contrary to the public policy of the City and the best interests of the cable Subscribers within the City. See City Cable Ordinance § 5.2.6.

---

[5] Regardless, as the claimed exercise of "purchase rights" by the City is inconsistent with transfer of the Adelphia cable television assets to Time Warner and Comcast, it stands to reason that the August 8, 2005 letter sufficiently apprised the cable companies that the City would not consent to the proposed transfer.

Case 4:06-cv-00033-mfu   Document 77   Filed 08/24/06   Page 9 of 23   Pageid#: 1932

First Collins Dec., Ex. 11 at 2. A substantially similar letter was sent to Time Warner the same day. See First Collins Dec., Ex. 12 at 2.

On January 20, 2006, Martinsville City Council adopted a resolution "Reaffirming and Restating Denial of Form 394 Applications Submitted by Adelphia Communications Corporation and Time Warner Cable Inc." See Time Warner PI Brief, Ex. 7. While this resolution recites that the City Council undertook "due deliberation at its meeting of August 5, 2005 and at prior meetings, and as thereafter reconfirmed at subsequent meetings," id., there are no minutes of any meeting in the record which corroborate this assertion. Indeed, in his recent July 11, 2006 deposition testimony, City Manager Collins testified that he did not think that City Council has considered issues of the franchise transfer or right of first refusal in any public meeting other than August 5, 2005 and January 20, 2006. Collins Dep. at 173.

At roughly the same time, on January 24, 2006, the Henry County Board of Supervisors adopted a virtually identical resolution. See Time Warner PI Brief, Ex. 8.

On February 28, 2006, Martinsville City Council passed a resolution requesting the West Piedmont Planning District Commission to create a Virginia nonstock corporation to acquire, own and operate a cable television system. See First Collins Dec., Ex. 13. Martinsville Cable, Inc. was incorporated on March 10, 2006 for the purpose of providing cable television services in Martinsville and Henry County "by acquiring, owning and operating the existing cable television system." Time Warner PI Brief, Ex. 10 at 2. The initial directors were Martinsville's Mayor, Vice Mayor and City Manager, and the Articles of Incorporation provided that three of the five directors be appointed by Martinsville City Council. Id. at 4. The registered office of the new corporation was the Office of the City Attorney of Martinsville, and the City Attorney served as

10

registered agent. Id. at 5. Upon dissolution, the assets of the of the corporation were to be distributed to the City of Martinsville, except for physical assets located in Henry County which the board of directors could distribute to Henry County. Id. at 6. The Articles of Incorporation could not be changed without the prior approval of the Martinsville City Council. Id. at 13.

Martinsville Cable held its organizational meeting on March 14, 2006, and on that date, the City of Martinsville assigned its "purchase rights" to the new corporation. See First Collins Dec., Ex. 14.

On June 14, 2006, Martinsville Cable filed suit in the Circuit Court for the City of Martinsville seeking a declaration that the sale and transfer of the Adelphia cable assets was subject to its claimed "purchase rights." The case subsequently was removed to the United States District Court for the Western District of Virginia.

### III.

Virginia adheres to Dillon's Rule, which provides that political subdivisions of the Commonwealth have only those powers expressly granted by state law or necessarily implied from express powers. See City of Virginia Beach v. Hay, 258 Va. 217, 518 S.E.2d 314, 316 (1999). In Marcus Cable Associates, L.L.C. v. City of Bristol, 237 F. Supp. 2d 675 (W.D. Va. 2002), the court held that Dillon's Rule prohibited the City of Bristol from operating a cable television system. The next year, the General Assembly enacted the Municipal Cable Law, allowing municipalities to provide cable television services, provided certain steps, including preliminary public hearing, feasibility study and referendum, are followed. Va. Code Ann. §§ 15.2-2108.2, et seq.

11

As regards Virginia cities such as Martinsville, the Municipal Cable Law provides that "[e]xcept as provided in this article, a municipality shall not (i) provide a cable television service; or (ii) purchase, lease, construct, maintain, or operate any facility for the purpose of providing a cable television service to one or more subscribers." Va. Code Ann. § 15.2-2108.4(A). This prohibition applies to a Virginia municipality acting (1) directly or indirectly, including through an authority or instrumentality acting on behalf of the municipality or acting for the benefit of the municipality, or (2) by itself, through a partnership, joint venture, or by contract, resale, or otherwise. Va. Code Ann. § 15.2-2108.4(B).

Virginia law requires that before a municipality "may engage or offer to engage" in any of these acts, it must hold a preliminary public hearing at which any interested party may appear and be heard. Va. Code Ann. § 15.2-2108.5(A). If the governing body of the municipality elects to proceed after holding the preliminary hearing, several other steps must be taken before a municipality may offer cable service, including the hiring of a feasibility consultant, preparation of a feasibility study, public hearings on the feasibility study and a referendum on whether or not the municipality shall provide the proposed cable television services. Va. Code Ann. §§ 15.2-2108.5 - 2108.8.

It is undisputed that the City of Martinsville has not complied with these required steps. Indeed, in stark contrast to the General Assembly's requirement of "a preliminary public hearing at which any interested party may appear and be heard," Va. Code Ann. § 15.2-2108.5, the record reflects that Martinsville's City Council made the decision "to exercise our right to purchase the City and County franchise," immediately following a closed session of Council on August 5,

2005. First Collins Dec., Ex. 7 at 3. There is no evidence that the City has undertaken even the first step – holding a preliminary public hearing – to comply with this law.[6]

Instead, Martinsville Cable contends that the City is exempt from complying with the terms of the Municipal Cable Law under a grandfather provision in the Virginia statute. When that statute was enacted in 2003, an exemption was created for any municipality that had obtained a certificate to operate as a telephone utility "and that had installed a cable television headend prior to December 31, 2002." Va. Code Ann. § 56-265.4:4(E). City Manager Collins testified that the City of Martinsville had neither owned nor physically installed a cable television headend prior to December 31, 2002. Collins Dep. at 139. Indeed, the original Adelphia headend was located on land in Henry County, although it was served by City utilities and accessed only through City streets. Id. at 38. Moreover, the City had not obtained a certificate to operate a telephone system under § 56-265.4:4 before December 31, 2002. Id. at 41-42. Nonetheless, Martinsville Cable argues that the City falls within this exemption because Adelphia had installed a headend pursuant to its agreement with the City and County.

Such a contention is not true to the plain meaning of the statute. By its express terms, this exemption allows local governments which had obtained a certificate and installed a headend to continue to operate without conducting the hearing, study and referendum required by the

_____

[6] It does not appear that even had the City complied with the procedural requirements of the Municipal Cable Law that it could provide cable television service to all of the subscribers served by Adelphia, particularly those in Henry County and Ridgeway. See Va. Code Ann. § 15.2-2108.11(G) (allowing a municipality to offer cable service only to those subscribers located within either the municipality's utility service area as it existed on January 1, 2003, or the area in which the municipality was providing local exchange or internet service over telecommunications facilities owned by the municipality as of the same date); Collins Dep. at 74-79.

13

Municipal Cable Law. Martinsville did neither within the time frame of the exemption. Neither the City Cable Ordinance nor the Franchise Agreement makes any mention of a headend. The City's act in contracting with a cable system to provide cable television service to subscribers in Martinsville, ostensibly through installation of a headend located somewhere, is a far cry different from installing a headend itself, which is required to fall within the exemption. Indeed, if the City's argument is accepted, it would cause the telephone utility exemption to swallow the Municipal Cable Law, as it would mean that every locality in Virginia that had a telephone utility certificate and had contracted with a cable company to provide cable television service prior to December 31, 2002 would fall outside the scope of the Municipal Cable Law. Martinsville Cable's argument is inconsistent with the plain meaning and clear intent of the telephone utility exemption.

Martinsville Cable also argues that the Municipal Cable Law is inapplicable because defendants have not established that Martinsville Cable was going to acquire these assets "for the purpose of providing a cable television service to one or more subscribers." Va. Code Ann. § 15.2-2108.4(A). Plaintiff argues, therefore, that if it has no intention of owning or operating the assets "for the purpose of providing cable television service," but rather seeks to acquire the assets to resell or "mothball" them in an exercise of negotiating "leverage" over Adelphia, Time Warner and Comcast, it does not need to comply with the public hearing, comment and referendum provisions of the Municipal Cable Law. Of course, such a contention turns on its head the plain meaning of the statute, the Marcus Cable holding and Dillon's Rule. Requiring a municipality to obtain approval of the voters, after public notice, hearing and study, to "purchase . . . any facility for the purpose of providing a cable television service," Va. Code Ann. § 15.2-

14

2108.4(A), does not mean that a municipality has the authority to acquire the same assets without procedural safeguards for any other purpose, such as exercising negotiating "leverage."

Further, Martinsville Cable's argument that the statute does not require a municipality to engage in public notice, study and referendum where it seeks to acquire a cable television system for negotiating "leverage" purposes is undermined by the testimony of its own witnesses as regards the purpose for the City's actions. Testimony of City officers makes it clear that the impetus for the City's interest in operating a cable television system is to make up for much needed revenue, lost when its landfill closed, by providing cable television services.

For example, former Mayor Joseph R. Cobbe testified that "the landfill closing just happened to coincide with Adelphia filing for bankruptcy. And their franchise gave us the option to acquire the system. So it was a combination of we're coming up short several million dollars a year from this revenue stream, and now we have this opportunity. So we had to exercise that option." Time Warner PI Brief, Ex. 2; Bankruptcy Proceeding Testimony of Joseph R. Cobbe at 22 (hereinafter "Cobbe Bank. Test.").

Martinsville City Manager Robert R. Collins made the City's intentions plain: "My approach is, you know, the City will obtain the cable system and run it." Time Warner PI Brief, Ex. 1; Bankruptcy Proceeding Testimony of Robert R. Collins at 117 (hereinafter "Collins Bank. Test."). In this case, Collins confirmed in deposition, "[t]he concept is for Martinsville Cable to be the regional cooperative for the region. They will in turn contract with the City to provide management and general oversight, and the City will retain all profits." Collins Dep. at 15.

Absent the grant of authority in the statute, the City lacks the power to acquire the cable television assets for any purpose, and in order to avail itself of the authority vested in the

15

Municipal Cable Law, the City must comply with its terms. As it has not done so, the City's efforts to exercise purchase rights for the Adelphia cable television assets have no lawful effect.[7]

In short, the argument pressed by Martinsville Cable at the hearing that the City was authorized to acquire cable television assets to obtain "leverage" to negotiate with the cable companies lacks both legal and factual validity. This does not mean, of course, that a municipality in Virginia cannot negotiate and properly exercise a right to match an offer to purchase cable television assets, or otherwise regulate the operation of cable television franchises, in the best interests of cable television subscribers. Indeed, the City of Martinsville surely could have done so in this case had it followed the requirements of the Municipal Cable Law and matched the Comcast offer.

Nor may Henry County provide cable televison service or purchase a facility for such purpose, as such actions are forbidden by statute. Va. Code Ann. § 15.2-2108.3 contains a clear prohibition against ownership or operation of cable television by Virginia counties, as follows: "Nothing in this article shall authorize any county or other political subdivision of the Commonwealth to (i) provide a cable television service; or (ii) purchase, lease, construct, maintain, or operate a facility for the purpose of providing a cable television service." Va. Code Ann. § 15.2-2108.3. Henry County's right to match has no legal validity because, by law, the County cannot purchase, own or operate a cable system under any circumstances.

---

[7] Nor may the City exercise its right to match the Comcast offer simply for the purpose of transferring it to a third party. Because the City did not comply with the Municipal Cable Law, it cannot offer to purchase, much less purchase or operate, the Adelphia cable television assets. See Va. Code Ann. §§ 15.2-2108.4 - 2108.5. Lacking this ability in its own right, it "may not sell, assign or hypothecate that which [it] does not own." Allstate Ins. Co. v. American Bankers Ins. Co. of Florida, 882 F.2d 856, 859 (4th Cir. 1989).

Thus, neither the City of Martinsville nor Henry County may lawfully acquire the assets of the Adelphia cable television system. As such, there is no legal basis for Martinsville Cable's right to match. For this reason alone, as a matter of law, Martinsville Cable's motion for partial summary judgment must be denied, and summary judgment must be entered for defendants. There are, however, additional reasons why Martinsville Cable's claim must be dismissed.

## IV.

Even assuming that Martinsville Cable had the right to match the Comcast offer, its claim for declaratory relief would fail as it has failed to exercise its right. Since the City notified the cable companies one year ago of its intent to exercise its right to match the offer to purchase the Adelphia cable television assets, few steps have been taken to ensure that Martinsville Cable is able to purchase those assets. Indeed, except for incorporating Martinsville Cable and assigning the City and County's rights to match to that entity, plaintiff has taken no steps to follow through on its expressed intention.

Indeed, while the City's letter of August 8, 2005 provided "formal notice to Adelphia of its decision to exercise the Purchase Rights with respect to both the City Cable Assets and the County Cable Assets," First Collins Dec., Ex. 9 at 2, no specific offer has been made to the cable companies. Collins Dep. at 171. The August 8, 2005 notice letter contained no price or other terms, nor have any been authorized by the City, id. at 171-72, even though the City and County have been aware of the terms of the Adelphia/Time Warner Asset Purchase Agreement and the Time Warner/Comcast Exchange Agreement since June, 2005.

17

Martinsville Cable is unable to provide a like-kind exchange of property specified in the Time Warner/Comcast transaction. Nor was it able to meet the transaction's July 31, 2006 closing date.

The Asset Purchase Agreement between Adelphia and Time Warner defines "Purchase Price Per Subscriber" as being $3,810 per subscriber. Martinsville Cable argues that this figure is meaningless as it does not reflect a valuation of any individual cable system, much less the value of the cable system in Martinsville and Henry County. Time Warner Cable's Supplemental Brief in Opposition (Docket No. 68); Declaration of Satish R. Adige at 3-4. But the ordinances on which plaintiff stakes its claim do not give it the right to dispute the price and other terms of the offer. The only right provided is the right to match. The plaintiff, aware of the $3,810 figure per subscriber since last summer, has not expressed its willingness to match that figure or make any other dollar figure offer. Collins Dep. at 170.

Nor is Martinsville Cable in any position to purchase a cable system. Martinsville Cable has no assets, no employees, no source of video programming, no software or other facilities for billing, no cable system equipment, no way to provide internet service, and no experience in operating a cable system. Collins Dep. at 52, 62, 64, 71, 80, 104, 114, 139. Additionally, as noted above, it lacks the legal authority to own or operate such a system.

In Miller v. LeSea Broadcasting, Inc., 87 F.3d 224 (7th Cir. 1996), Chief Judge Posner explained the limited nature of the right claimed by Martinsville Cable:

> A right of first refusal is the weakest of options; technically it is not an option at all, because it does not require the grantor to offer the property subject to it for sale, ever. All it entitles the holder to do is to match an offer from a third party should the grantor of the option be minded to accept that offer. It is thus merely a preemptive right,

18

> although it becomes an option when the grantor decides to sell on the terms offered by the third party; at that point the holder of the option has the right to buy the property, a right that is a true option. . . .
>
> The cost to the grantor of a right of first refusal is slight, at least if the law requires that, for the holder to be able to exercise the right, the match between his offer and the third party's offer be exact. The requirement of exact matching has social as well as private value. Without it, the right is an impediment to the marketability of property, because it gives the holder of the right a practical power to impede a sale to a third party by refusing to match the third party's offer exactly and then arguing that the discrepancy was immaterial.

Id. at 226. Judge Posner observed that most courts dealing with this issue have held that the match must meet all material terms.

Here, in contrast, Martinsville Cable has not specified any terms of its offer, much less met the material terms of the Comcast offer. Although it had a year to do so, Martinsville Cable failed to meet the time specified for closing, could not match the like-kind exchange, and has expressed reluctance to meet the dollar figure set forth in the Time Warner Asset Purchase Agreement. Nor does Martinsville Cable have the ability – practical, financial or legal – to match the offer.

Martinsville Cable argues that it is excused from making any specific offer because the cable companies did no valuation of the cable television assets located in Martinsville and Henry County, and the $3,810 figure is too high. This is beside the point. The cable ordinances do not grant the City and County the right to pay a fair value for the Adelphia cable television assets, much less a value they believe to be fair. The ordinances only provide Martinsville Cable with the limited right to match what Time Warner and Comcast have offered, which it utterly failed to do.

19

## V.

Finally, the record of the deliberations and the decisions made by the City and County in denying the FCC Form 394 applications for consent to the proposed transfer appears inconsistent with the requirements of the City and County cable ordinances. Section 5.2.3 of the City Cable Ordinance provides that "[n]o transfer of a franchise shall occur without prior approval of the City of Martinsville, and such approval shall not be unreasonably withheld." First Collins Dec., Ex. 2 at 12. The County Cable Ordinance contains the same provision. First Collins Dec., Ex. 4 at 11-12. Section 5.2.6 of each ordinance provides as follows:

> In making a determination on whether to grant an application for transfer of a franchise, the City Council [Board of Supervisors] shall consider the legal, financial, technical and other qualifications of the transferee to operate the system; whether the incumbent cable operator is in compliance with its Franchise Agreement and this Ordinance and, if not, the proposed transferee's commitment and plan to cure such noncompliance; and whether operation by the transferee would adversely affect cable services to subscribers, or otherwise would be contrary to the public interest.

In contrast to the requirements of these cable ordinances, the record does not reflect that either the County or the City undertook consideration of the factors required in § 5.2.6. City Manager Collins testified that the City had no technical or financial objections to Comcast's ability to run the system, and its only legal objection was based on the right to match the offer. Collins Dep. at 186. City Manager Collins testified in the bankruptcy proceeding that the primary reason for the City's denial of consent to the transfer of the franchise was because the City wanted to acquire the cable system, and he recalled no discussion among Council members as regards a preference for Time Warner or Comcast as the cable operator. Collins Bank. Test. at 116-17. Likewise, former Mayor Cobbe testified that the FCC consent to transfer applications

20

were denied so the City could "maintain . . . our efforts to acquire the cable system." Cobbe Bank. Test. at 20. Nothing in the minutes of the proceedings of either the County Board of Supervisors or the City Council suggests that those bodies deliberated in a manner consistent with § 5.2.6. Indeed, the communications by both the City and County focus on the effort to exercise the right to match the offer to purchase to the exclusion of any other reason.

It does not appear, therefore, that either the City or the County acted in a manner required by their cable ordinances. While to be sure, each body believes that acquisition of the cable system by Martinsville Cable will be in the public interest because it could fill a revenue shortfall occasioned by the closure of the City's landfill, § 5.2.6 of each cable ordinance requires that the governing body consider other factors directly related to the operation of the cable system and the service to be provided to subscribers.

As it is clear from the record that the requirements of § 5.2.6 were not met, the decisions of the City and County to deny the transfer applications run afoul of each cable ordinance and provide yet another reason for denial of Martinsville Cable's motion for partial summary judgment.[8]

---

[8] Defendants argue that the City consented to the transfer of the Adelphia cable television assets because it did not timely respond to the FCC Form 394 filings. While it is true that the minutes of the August 5, 2005 City Council meeting do not document any motion, resolution or ordinance adopted by the City to deny the FCC application, the action taken by the City to exercise the right to match is plainly inconsistent with approval of the transfer of the assets to Time Warner and Comcast. The letters from counsel of August 8, 2005 and October 7, 2005 make clear the City's intention to deny the asset transfer. Further, declarations filed by members of Martinsville City Council state that:

> [O]ne of the items considered at the [August 5, 2005] meeting during the executive session was the proposed transfers of the City Franchise Agreement from Adelphia to Time Warner and from Time Warner to

(continued...)

21

## VI.

For these reasons, Martinsville Cable's attempt to apply "leverage" to the transfer of the Adelphia cable television assets to Time Warner and Comcast wholly lacks support in the law. Virginia law does not allow Henry County to acquire the Adelphia Cable assets. As the City did not comply with the Municipal Cable Law, it may not indirectly, through Martinsville Cable, lawfully acquire the cable facilities formerly operated by Adelphia. Not only has the City not made any timely matching offer to the cable companies, Martinsville Cable is in no position, practically, technologically or financially, to match the offer to purchase made by Time Warner and Comcast. Finally, there is no evidence to suggest that either governing body met the requirements of the applicable cable ordinances in deciding to exercise "leverage" over the transaction. Because of these failings, Martinsville Cable has no enforceable rights which it may exercise as regards the transfer of the cable franchise to Time Warner and Comcast at this time.

---

[8](...continued)
> Comcast. As a consequence of the City Council's decision to exercise the Purchase Rights, the City Council determined to deny the FCC Form 394 applications for consent to the proposed transfers of the City Franchise Agreement.

Declarations of James W. Clark, Joseph R. Cobbe and J. Ronald Ferrill at ¶ 4 (Docket Nos. 70, 72 and 73). As a consequence, the court rejects defendants' argument that the City waived its right to object to the transfer under 47 U.S.C. § 537. However, as noted above, there are many other reasons for entering summary judgment in favor of defendants.

22

Accordingly, plaintiff Martinsville Cable's motion for partial summary judgment is

**DENIED**, defendants Time Warner and Comcast's joint motion for summary judgment is

**GRANTED**,[9] and this case is dismissed. An appropriate Order will be entered this day.

Enter this 24 day of _August_, 2006.

Michael F. Urbanski
United States Magistrate Judge

---

[9] Granting summary judgment in this case renders moot the counterclaims filed by Time Warner against Martinsville Cable and by Comcast against Martinsville Cable, Henry County and City of Martinsville (Docket Nos. 15, 41), the third party complaint filed by Time Warner against Henry County and the City of Martinsville (Docket No. 20), and associated motions to dismiss (Docket Nos. 36, 39 ).

23